## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN  DIVISION

| | | |
|---|---|---|
| **WILLIAM M. STEPHENS,** | ) | |
| 1705 N. Ryan Street | ) | |
| McHenry, IL 60050 | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **SELECT PORTFOLIO SERVICING, INC.,** | ) | |
| Illinois Corporation Service Company | ) | |
| 801 Adlai Stevenson Drive | ) | |
| Springfield, IL 62703 | ) | |

Defendant.

## COMPLAINT

Plaintiff, William M. Stephens, by and through counsel, for his Complaint against defendant, Select Portfolio Servicing, Inc., states:

## PARTIES, JURISDICTION, AND VENUE

1.      William M. Stephens ("Stephens" or "Plaintiff") is the owner of real property located at 1705 N. Ryan Street, McHenry, IL 60050 (the "Home").

2.      Stephens currently maintains the Home as his primary, principal residence, and has so maintained the Home at all times relevant.

3.      Select Portfolio Servicing, Inc. ("Defendant" or "SPS") is the current servicer of a note executed by Stephens (the "Note") and a mortgage on the Home executed by Stephens that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

5.     This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

6.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Stephens maintains the Home as his primary residence within this District.

## INTRODUCTION AND BASIS FOR RELIEF

7.     Stephens brings this case against the SPS because he is a victim of dual tracking by SPS.  As detailed herein below, Stephens sought to modify his Loan and upon doing so SPS failed to stay its efforts to foreclose upon his Home, instead allowing the foreclosure to proceed toward judgment and sale.

8.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

10.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

11.     SPS is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

12.     Stephens has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## STEPHENS' FINANCIAL DIFFICULTIES, FORECLOSURE AND ATTEMPTS TO MODIFY HIS LOAN

13.     In 2016, Stephens encountered financial problems which made it difficult for him to pay the Loan.

14.     The owner of his Loan commenced proceedings to foreclose filing a case captioned *U.S. Bank, N.A. as trustee, S/I/I to Bank of America, N.A. as trustee S/B/M to LaSalle Bank, N.A. as trustee for Certificateholders of Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2004-HE11 v. William M. Stephens,* et al., in the Circuit Court for the 22nd Judicial Circuit for McHenry County, Illinois, and assigned Case No. 16 CH 467 (the "Foreclosure").

15.     In an effort to save the Home and to continue to make reasonable payments on the Loan, Stephens sought relief from SPS in the form of a loan modification in April of 2017.

16.     Specifically, Stephens submitted a loss mitigation application to SPS, by and through counsel, on April 25 2017.

17.     On or about April 25, 2017, Stephens, by and through counsel, submitted a loss mitigation application to SPS ("Submission #1) via email correspondence to Foreclosure Counsel.  A true and accurate copy of the cover page for Submission #1 is attached as *Plaintiff's*

*Exhibit 1.*

18.     On or about April 28, 2017, SPS sent correspondence requesting additional documents by May 28, 2017 ("Request #1"). A true and accurate copy of Request #1, is attached as *Plaintiff's Exhibit 2.*

19.     On May 2, 2017, Stephens, by and through counsel, submitted any and all documents requested by and through Request #1 to SPS via email correspondence to Foreclosure Counsel and fax transmission to 866-867-3010 ("Submission #2"). A true and accurate copy of the cover page for the Submission #2 is attached as *Plaintiff's Exhibit 3.*

20.     SPS sent correspondence acknowledging Submission #2 on or about May 2, 2017. A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 4.*

21.     Stephens promptly submitted all of the requested documents to SPS on May 2, 2017 rendering his pending loss mitigation application facially complete.

22.     On May 3, 2017 SPS allowed Kleuver & Platt ("Foreclosure Counsel") to move forward with its Motion for Summary Judgement in violation of Regulation X of the Real Estate Settlement Procedures Act (RESPA) dual tracking provision. Specifically, counsel was allowed to proceed with the briefing schedule for the pending Motion for Summary Judgement against Stephens. A true and accurate copy of the Foreclosure Court order dated May 3, 2017 is attached as *Plaintiff's Exhibit 5.* This action was taken despite SPS being in possession of a facially complete loss mitigation application. See *Plaintiff's Exhibit 4.*

## STEPHENS' ATTEMPTS TO HAVE ERRORS CORRECTED AND HIS LOSS MITIGATION APPLICATION PROPERLY EVALUATED

23.     On May 4, 2017, Stephens, by and through counsel, sent correspondence to SPS captioned "Notice of Error under 12 C.F.R. §1024.35(b)(9), 12 C.F.R. §1024.35(b)(11), and 12

C.F.R. §1024.41(g)" via Certified U.S. Mail [Receipt 7014 0150 0000 2358 2268] ("NOE #1").

A true and accurate copy of NOE #1 is attached as *Plaintiff's Exhibit 6.*

24.     SPS received NOE #1 on or about May 9, 2017 at approximately 8:06 am. A

copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE

#1 is attached as *Plaintiff's Exhibit 7.*

25.     On May 15, 2017, Foreclosure Counsel sent email correspondence to Stephens

requesting additional documents ("Request #2"). A true and accurate copy of Request #2 is

attached as *Plaintiff's Exhibit 8.*

26.     On May 23, 2017, Stephens, by and through counsel, submitted any and all

documents requested by and through Request #2 to SPS via email correspondence to Foreclosure

Counsel ("Submission #3"). A true and accurate copy of the cover page for the Submission #3 is

attached as *Plaintiff's Exhibit 9.*

27.     SPS sent correspondence acknowledging Submission #3 on or about May 24,

2017. A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 10.*

28.     On or about May 24, 2017, SPS sent correspondence requesting additional

documents by June 23, 2017 ("Request #3"). A true and accurate copy of Request #3 is attached

as *Plaintiff's Exhibit 11.*

29.     Subsequently, on or about May 26, 2017 SPS sent correspondence to Stephens

acknowledging that his pending loss mitigation application was complete. A true and accurate

copy of such correspondence is attached as *Plaintiff's Exhibit 12.*

30.     On or about June 2, 2017, SPS sent correspondence to Stephens in response to NOE #1 ("Response to NOE #1").  A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 13*.

31.     Response to NOE #1 stated that "Due to the current litigation, SPS believes it would be more appropriate to refrain from providing a detailed response to you at this time…" See *Id*.

32.     On or about June 19, 2017, SPS generated a response to Stephens's loss mitigation application denying him for any and all home retention options (the "Denial").  A true and accurate copy of the Denial is attached as *Plaintiff's Exhibit 14*.

33.     On June 22, 2017, Stephens, by and through counsel, submitted any and all documents requested by and through Request #3 to SPS via fax transmission to 866-867-3010 ("Submission #4").  A true and accurate copy of the cover page for the Submission #4 is attached as *Plaintiff's Exhibit 15*.

34.     In an effort to get a proper response to NOE #1, on June 22, 2017, Stephens, by and through counsel, sent correspondence to SPS captioned "Notice of Error under 12 C.F.R. §1024.35(b)(9), 12 C.F.R. §1024.35(b)(11), 12 C.F.R. §1024.41(g), and 12 C.F.R. §1024.35(d)" via Certified U.S. Mail [Receipt 7014 0150 0000 2358 2367] ("NOE #2").  A true and accurate copy of NOE #2 is attached as *Plaintiff's Exhibit 16*.

35.     SPS received NOE #2 on or about June 26, 2017 at approximately 8:04 am.  A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE #1 is attached as *Plaintiff's Exhibit 17*.

36.     On or about June 28 2017, SPS sent correspondence to Stephens in response to NOE #2 ("Response #1 to NOE #2").  A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 18*.

37.     Response #1 to NOE #2 stated that "[t]he correspondence was sent to our dedicated Dispute/Inquiry mailbox.  Because your letter did not raise an issue with the servicing of your account, we have directed your correspondence to the appropriate department for handling, and we consider this matter closed." See *Id.*

38.     On or about July 19, 2017 SPS sent additional correspondence to Stephens in response to NOE #2 ("Response #2 to NOE #2").  A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 19*.

39.     In response to Response #1 to NOE #2, on July 27, 2017, Stephens, by and through counsel, sent correspondence to SPS captioned "Notice of Error under 12 C.F.R. §1024.35(b)(9), 12 C.F.R. §1024.35(b)(11), 12 C.F.R. §1024.41(g), and 12 C.F.R. §1024.35(d)" via Certified U.S. Mail [Receipt 7014 0150 0000 2358 1728] ("NOE #3").  A true and accurate copy of NOE #3 is attached as *Plaintiff's Exhibit 20*.

40.     SPS received NOE #3 on or about August 1, 2017 at approximately 8:17 am.  A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for NOE #1 is attached as *Plaintiff's Exhibit 21*.

41.     On or about August 31 2017, SPS sent correspondence to Stephens in response to NOE #3 ("Response to NOE #3").  A true and accurate copy of such correspondence is attached as *Plaintiff's Exhibit 22*.

**DAMAGE TO STEPHENS**

42.     Throughout this entire ordeal, Stephens has simply wanted to save his Home with a loan modification, to responsibly resume his mortgage payments, and begin the lengthy process of rehabilitating his credit.

43.     SPS's actions have caused Stephens to: (1) spend significant time gathering duplicative documents and filling out duplicative forms in order to be considered for a loan modification; (2) spend money on paper, postage and legal fees to compile and send such submissions to SPS; and (3) incur legal fees and expenses to draft and mail notices of error via Certified U.S. Mail to seek SPS's compliance with its obligations under Regulation X..  See *Plaintiff's Exhibit 22.*

44.     At the time of the filing of this Complaint, SPS has had at least  Three Thousand Four Hundred Ninety Nine (3,499) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www. consumerfinance.gov/data-research/consumer-complaints/).

## COUNT ONE
## VIOLATION OF 12 C.F.R. § 1024.41(g)

**(Failure to prevent Foreclosure Counsel from moving for judgement in the Foreclosure)**

45.     Stephens  restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 44 in their entirety, as if fully rewritten herein

46.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

47.     12 C.F.R. § 1024.41(g) provides that "[i]f a borrower submits a complete loss

mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option."

48.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(g) provides that "[t]he prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale."

49.     There was no sheriff's sale scheduled at all times relevant.

50.     On or about April 28, 2017 SPS sent Stephens Request #1. See *Plaintiff's Exhibit 2.*

51.     On or about May 2, 2017 Stephens provided Submission #2 to SPS via fax

transmission. See *Plaintiff's Exhibit 3*. Stephens was required to submit the requested documents no later than May 28, 2017 pursuant to Request #1. See *Plaintiff's Exhibit 2*.

52.     Submission #2 contained any and all documents requested by and through Request #1. See *Plaintiff's Exhibit 6*. Accordingly, SPS was in possession of a facially complete loss mitigation application on May 2, 2017. See *Id.*

53.     Despite the above, on May 3, 2017 Foreclosure Counsel moved forward with the pending Motion for Summary Judgment in the Foreclosure by allowing a briefing schedule to be set by the Court in the Foreclosure. See *Plaintiff's Exhibit 5*.

54.     On May 3, 2017, SPS had not considered Stephens's eligibility for any and all loss mitigation options made available to him by his investor as required under 12 C.F.R. § 1024.41(c).

55.     SPS's actions in allowing Foreclosure Counsel to move forward with judgment in the Foreclosure resulted in violation of 12 C.F.R. § 1024.41(b)(10) which each constitute a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(g).

56.     SPS's actions are part of a pattern and practice of behavior in conscious disregard for Stephens's rights.

57.     In addition to the damages outlined, *supra*, SPS's violation of 12 C.F.R. § 1024.41(g) directly and proximately caused Stephens to incur actual damages including but not limited to attorneys' fees. See *Plaintiff's Exhibits 5 and 6*.

58.     As a result of SPS's actions, SPS is liable to Stephens for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO
## MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.41(b)

**(Failure to exercise reasonable diligence in obtaining documentation
necessary to obtain a complete loss mitigation application)**

59.     Stephens restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 44 in their entirety, as if fully rewritten herein.

60.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

61.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

59.     12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

60.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

11

61.    There was no sheriff's sale scheduled at all times relevant.

62.    On April 25, 2017, Stephens, by and through counsel, provided Submission #1, a loss mitigation application, to SPS via email correspondence to Foreclosure Counsel and fax transmission to . See *Plaintiff's Exhibit 1*.

63.    Submission #1 included the following documents:

- Request for Financial Information Form

- Authorization for Access to Interior of Home

- RMA

- Borrower Hardship Certification Form

- General Third Party Authorization Form

- 4506-T Form

- 4506T-EZ Form

- UBA

- Signed and Dated Financial Statement from Borrower

- Hardship Letter

- Profit and Loss Statement (Quarterly)(January 1, 2017-March 31, 2017)

- Profit and Loss Statement (YTD) (January 1, 2016-December 31, 2016)

- 2015 Tax Returns

- Proof of Hardship

- Documentation for Business

See *Id.*

64.     On April 28, 2017, SPS mailed Request #1 to Stephens.  See *Plaintiff's Exhibit 2*.

65.     Request #1 stated that "[SPS has] reviewed the information received and [has] determined that the submitted documentation is insufficient or information is still needed as shown on the document attached to this letter" and requested that Stephens provide the requested documents by May 28, 2017. See *Id.*

66.     Request #1 specifically requested (1) Federal Tax Returns missing signature or date from Primary Customer and (2) Percentage of Ownership for Self-Employment Income. See *Plaintiff's Exhibit 2.*

67.     On May 2, 2017, Stephens, by and through counsel made Submission #2 to SPS via fax transmission to 866-867-3019. See *Plaintiff's Exhibit 3.*

68.     Submission #2 provided any and all documents requested by SPS by and through Request #1.  See *Plaintiff's Exhibits 2 and 3.*

69.     On or about May 15, 2017, Foreclosure Counsel Request #2 to Stephens. See *Plaintiff's Exhibit 8.*

70.     Request #2 stated that:

        (1) ** Received RMA however in sec-4 income and expenses column is blank (sic)

        (2) and borrower mentioned see attached sheet and rcvd customer financial statement but in that unable identify (sic) incomes, which is not acceptable.

> Hence need a recent complete 7 page RMA complete filled out with incomes and expenses with signed or dated (sic) OR customer financials showing income & expenses signed and dated with in (sic) 90 days.

See *Id.*

71.     SPS previously received each and every one of the documents enumerated in Request #2 by and through Submission #1.  See *Plaintiff's Exhibits 1.*

72.     Regardless, in a showing of good faith and in an attempt to expedite the loss mitigation process, on May 23, 2017, Stephens, by and through counsel, provided Submission #3 to SPS, by and through Foreclosure Counsel. See *Plaintiffs' Exhibit 9.*

73.     On or about May 24, 2017, SPS mailed Request #3 to Stephens.  See *Plaintiff's Exhibit 11.*

74.     Request #3 provided that:

> Documents listed below are required and have not been received.
>
> Paystubs:  Income documentation to verify all income of each customer.   For each customer who is a waged/salaried employee…

See *Id.*

75.     Again, SPS was already in possession of documentation from Stephens advising that he only receives self-employment income. See *Plaintiff's Exhibits 1, and 3.*

76. Inexplicably, on or about May 26, 2017 SPS mailed correspondence to Stephens acknowledging that his pending loss mitigation application was complete. See *Plaintiff's Exhibit 12.*

77. Unsure about whether Request #3 required a response, on June 22, 2017, Stephens, by and through counsel, provided Submission #4 to SPS. See *Plaintiff's Exhibit 15.*

78. Submission #4 provided any and all documents requested by SPS by and through Request #3. See *Plaintiff's Exhibits 11 and 15.*

79. SPS's lack of diligence in reviewing Stephens's loss mitigation submissions and in obtaining a complete loss mitigation application by and through actions including repeatedly requesting documents already in SPS's possession delayed the loss mitigation process for the Loan.

80. SPS's failure to exercise reasonable diligence to obtain documents and information necessary to obtain a complete loss mitigation application subsequent to Stephens's submission of loss mitigation materials beginning on April 25, 2017 when Stephens submitted Submission #1 constitutes an egregious clear, separate, and distinct violation of 12 C.F.R. § 1024.35(b)(11) for failing to comply with 12 C.F.R. § 1024.41(b)(1).

81. SPS's actions are part of a pattern and practice of behavior in conscious disregard for Stephens's rights.

82. In addition to the damages outlined, *supra*, SPS's violation of 12 C.F.R. § 1024.41(b)(1) directly and proximately caused Stephens to incur actual damages including but not limited to attorneys' fees and the costs paper and postage required to make the duplicitous submissions.

**COUNT THREE**

## MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.35

### (Failure to perform reasonable investigations into the error alleged through NOE #1, NOE #2, and NOE #3)

83.   Stephens restates and incorporates herein each of their statements and allegations contained in paragraphs 1 through 44 in their entirety, as if fully rewritten herein.

84.   12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

85.   12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

86.   12 C.F.R. § 1024.35(e)(3)(i)(B) provides that, in regard to a notice of error submitted pursuant to 12 C.F.R. § 1024.35(b)(11), a servicer must comply with 12 C.F.R. § 1024.35(e)(1) no later than thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, after the servicer's receipt of the applicable notice of error or prior to the date of a foreclosure sale, whichever is earlier.

16

87.   There was no sheriff's sale scheduled at all times relevant.

88.   On or about April 28, 2017 SPS sent Stephens Request #1. See *Plaintiff's Exhibit 2*.

89.   On or about May 2, 2017 Stephens provided Submission #2 to SPS via fax transmission. See *Plaintiff's Exhibit 3*. Stephens was required to submit the requested documents no later than May 28, 2017 pursuant to Request #1. See *Plaintiff's Exhibit 2*.

90.   Submission #2 contained any and all documents requested by and through Request #1. See *Plaintiff's Exhibit 6*. Accordingly, SPS was in possession of a facially complete loss mitigation application on May 2, 2017. See *Id.*

91.   Despite the above, on May 3, 2017 Foreclosure Counsel moved forward with the pending Motion for Summary Judgment in the Foreclosure by allowing a briefing schedule to be set by the Court in the Foreclosure. See *Plaintiff's Exhibit 5.*

92.   On May 3, 2017, SPS had not considered Stephens's eligibility for any and all loss mitigation options made available to him by his investor as required under 12 C.F.R. § 1024.41(c).

93.   On May 4, 2017, Stephens, by and through counsel, in an attempt to get SPS to stop dual tracking the Loan, sent NOE #1 to SPS via Certified U.S. Mail to SPS's self-designated address for such pursuant to 12 C.F.R. § 1024.35(c). See *Plaintiff's Exhibit 6*.

94.   NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id*.

95.   SPS received NOE #1 on or about May 9, 2017. See *Plaintiff's Exhibit 7*.

96.   On or about June 2, 2017, SPS sent the Response to NOE #1 to Stephens. See *Plaintiff's Exhibit 13*.

97.     The Response to NOE #1 stated that "Due to the current litigation, SPS believes it would be more appropriate to refrain from providing a detailed response to you at this time…" See *Id.*

98.     The Response to NOE #1 is improper as SPS failed to either "[correct] the error or errors identified by the borrower and [provide] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[conduct] a reasonable investigation and [provide] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

99.     In another attempt to have SPS correct the dual tracking error, on June 22, 2017 Stephens, by and through counsel, sent NOE #2 to SPS via Certified U.S. Mail to SPS's self-designated address for such pursuant to 12 C.F.R. § 1024.35(c).  See *Plaintiff's Exhibit 16*.

100.    NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id.*

101.    SPS received NOE #2 on or about June 26, 2017. See *Plaintiff's Exhibit 17*.

102.    On or about June 28, 2017, SPS sent Response #1 to NOE #2 to Stephens.  See *Plaintiff's Exhibit 18*.

103.    In Response #1 to NOE #2, SPS stated that "[t]he correspondence was sent to our dedicated Dispute/Inquiry mailbox.  Because your letter did not raise an issue with the servicing

of your account, we have directed your correspondence to the appropriate department for handling, and we consider this matter closed." See *Id.*

104.    It is clear that in sending Stephens Response #1 to NOE #2, SPS had again sent an improper response pursuant to 1024.35(e)(1).

105.    On or about July 19, 2017, SPS sent Response #2 to NOE #2 to Stephens.  See *Plaintiff's Exhibit 19*.

62.    It is clear from Response #2 to NOE #2 that SPS did not perform a reasonable investigation into the errors alleged by and through NOE #2. Any reasonable investigation into the error alleged by and through NOE #2 would have noted that Stephens had submitted a facially complete loss mitigation application prior to May 3, 2017 and Request #2 and Request #3 did not provide that documents previously submitted by Stephens had expired and were required to be updated.  See *Plaintiff's Exhibit 16.*

63.    Not yet aware of Response #2 to NOE #2, on July 27, 2017 Stephens, by and through counsel, sent NOE #3 to SPS via Certified U.S. Mail to SPS's self-designated address for such pursuant to 12 C.F.R. § 1024.35(c) in response to Response #1 to NOE #2.  See *Plaintiff's Exhibit 20*.

64.    NOE #3 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id*.

65.    SPS received NOE #3 on or about August 1, 2017. See *Plaintiff's Exhibit 21*.

66.    On or about August 31, 2017, SPS sent the Response to NOE #3 to Stephens.  See *Plaintiff's Exhibit 22*.

106.    Any reasonable investigation into the error alleged by and through NOE #3 would have included a review of the enclosures to NOE #3 and had SPS actually reviewed the

enclosures to NOE #3, it would have been readily apparent that SPS's actions had allowed dual tracking to occur and that SPS's actions in repeatedly requesting documents that had been previously provided by Stephens caused Stephens to make unnecessary duplicitous submissions. See *Plaintiff's Exhibit 20.*

107.   SPS's actions, in failing to provide a proper response to NOE #1 and NOE #2 constitute a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e).

108.   SPS's actions, in failing to perform a reasonable investigation into the errors alleged by and through NOE #2 and NOE #3 constitute a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e).

109.   SPS's actions are part of a pattern and practice of behavior in conscious disregard for Shepherd's rights.

110.   As a result of SPS's actions, SPS is liable to Stephens for actual damages, statutory damages, costs, and attorneys' fees.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff William M. Stephens pray that this Court enter its order granting judgment in his favor as follows:

A)   A finding that SPS committed violations of 12 C.F.R. §§ 1024.35 and 1024.41 as alleged in Counts One through Three;

B)   For actual damages in an amount to be determined at trial as to each and every count;

C)   For costs, and reasonable attorneys' fees;

D)   For statutory damages against SPS in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §§ 1024.35 and 1024.41, as alleged by and through Counts One through Three;

E)     Such other relief which this Court may deem appropriate.

                              *Respectfully submitted,*

                              */s/ Rusty A. Payton*
                              Rusty A. Payton
                              Marc E. Dann
                              DANNLAW
                              20 North Clark Street, Suite 3300
                              Chicago, Illinois 60602
                              notices@dannlaw.com
                              *Counsel for Plaintiff William M. Stephens*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors

permitted by law.

                              */s/ Rusty A. Payton*
                              Rusty A. Payton
                              Marc E. Dann
                              DANNLAW
                              20 North Clark Street, Suite 3300
                              Chicago, Illinois 60602
                              notices@dannlaw.com
                              *Counsel for Plaintiff William M. Stephens*

21